(C.D. 3685)

BARTH & DREYFUSS *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 3, 1969)

*Stein & Shostak* (*Leonard M. Fertman* and *S. Richard Shostak* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Bernard J. Babb,* trial attorney), for the defendant.

Before RAO and FORD, Judges, and WILSON, Senior Judge

WILSON, Judge: The merchandise under protest herein consists of cotton terry cloth potholders which were classified under schedule 3, part 7, subpart B, item 386.25 of the Tariff Schedules of the United States (referred to *infra* as TSUS), as other articles of cotton terry, assessed with duty at 20 per centum ad valorem.

The plaintiff claims that the merchandise is properly classifiable under the provision for other furnishings of cotton terry under item 366.65 of TSUS, dutiable at 16 per centum ad valorem.

The pertinent provisions of the TSUS herein are as follows:

SCHEDULE 3. – TEXTILE FIBERS AND TEXTILE PRODUCTS

Part 7. – Miscellaneous Textile Products; Rags and Scrap Cordage

Subpart B. – Textile Articles Not Specially Provided For

Subpart B headnote:

1. This subpart covers articles, of textile materials, not covered elsewhere in the tariff schedules.

Articles not specially provided for, of textile materials:

\*      \*      \*      \*      \*      \*      \*

Other articles, not ornamented:
  Of cotton:

\*      \*      \*      \*      \*      \*      \*

Pile or tufted construction:

\*      \*      \*      \*      \*      \*      \*

386.25          Terry _____ 20% ad val.

SCHEDULE 3. – TEXTILE FIBERS AND TEXTILE PRODUCTS
Part 5. – Textile Furnishings

Subpart C. – Tapestries, Linens, and Other Furnishings

Subpart C headnotes:

1. For the purposes of this subpart, the term "furnishings" means curtains and drapes, including panels and valances; towels, napkins, tablecloths, mats, scarves, runners, doilies, centerpieces, antimacassars, and furniture slipcovers; and like furnishings; all the foregoing, of textile materials, and not specially provided for.

\*   \*   \*   \*   \*   \*   \*

Other furnishings, not ornamented:
  Of vegetable fibers:

\*   \*   \*   \*   \*   \*   \*

  Other:

\*   \*   \*   \*   \*   \*   \*

    Pile or tufted construction:
      Of cotton:

\*   \*   \*   \*   \*   \*   \*

| 366.65 | Terry _____ 16% ad val. |

Since the provision in item 366.65 of TSUS for other cotton terry furnishings is clearly more specific than the provision in item 386.25 for other cotton terry articles "not covered elsewhere in the tariff schedules," the sole issue at bar is whether the cotton terry potholders involved herein are "furnishings." Since the defendant concedes the correctness of the plaintiff's contention herein and requests that it be, and was, excused from filing a brief in this case, the summary of facts hereinafter set forth in plaintiff's brief is substantially as follows:

The record in the instant case consists of the testimony of Norman Shacknove, a vice president of the plaintiff, and two exhibits offered by the plaintiff which were received in evidence without objection. Exhibit 1 is a sample illustrative of the cotton terry potholders at bar, and allegedly constitutes "furnishings" of the same class and character as towels, napkins, etc., enumerated in the definition of "furnishings" in schedule 3, part 5, subpart C headnoted, *supra*, and that it is *ejusdem generis* with the towels, place mats, napkins and dishcloths sold by the plaintiff. Plaintiff's exhibit 2 is a page from plaintiff's 1967–1968 catalog showing two boxed sets of a towel, an apron and a potholder in a matching unit, indicating that the merchandise at bar is dealt with in commerce as furnishings such as the other articles enumerated in schedule 3, part 5, subpart C, headnote 1, *supra*.

Mr. Shacknove testified substantially as follows: He is engaged in buying and selling merchandise for the plaintiff herein, and has been with the plaintiff company for nearly 2 years. Prior thereto he had been importing housewares, domestic wares and furnishings since 1946. The plaintiff sells to customers located throughout the United States, including discount houses such as Zager's and Korvette's; chain stores such as J. C. Penney's, Woolworth's, Montgomery Ward, and Sears & Roebuck; and department stores such as Bullock's, May Co. and similar stores in the East.

Mr. Shacknove testified further that the plaintiff company does approximately 10½ to 11 million dollars of business per year and is the largest company of its type; that plaintiff company was primarily what is known in the trade as a "converter," which is a company which takes materials and decorates them and combines and packages and distributes items which are used as home furnishings; that the types of merchandise dealt in by the plaintiff company include towels, place mats, napkins, potholders, kitchen towels, aprons, and tablecloths; that the potholders at bar are sold in conjunction with kitchen towels, aprons and dishcloths; and that item numbers 6171 and 6172 on page 11 of plaintiff's 1967–68 catalog were boxed 3-piece kitchen cotton terry ensemble sets containing a kitchen towel, an apron and a potholder in a matching unit.

Mr. Shacknove identified plaintiff's exhibit 1 as a potholder, which was imported from Japan and testified that it is of the same class and kind as the merchandise now being imported; that it is of terry construction and is representative of the cotton terry potholders on the invoice of the entry at issue herein; that he first became familiar with plaintiff's exhibit 1 when he came to work for the plaintiff company; that this merchandise was used in the kitchen or between the kitchen and the dining room as a potholder to protect the hand from hot pots or hot plates; and that while plaintiff company converted some material into towels or potholders or aprons, the merchandise the subject of the instant case was imported as potholders and was not converted.

When read subpart C, headnote 1, *supra*, Mr. Shacknove expressed his opinion, based upon his knowledge and experience in the trade, that the potholders at bar came within the definition of "furnishings" set forth in said headnote, which definition conformed with that of "furnishings" in the trade.

On the issue of whether the potholders are "furnishings" the plaintiff cited and discussed two cases decided under the Tariff Act of 1930, *Fabry Associates, Inc.* v. *United States*, 45 Cust. Ct. 88, C.D. 2203, and *Furniture Import Corp.* v. *United States*, 56 Cust. Ct. 125, C.D. 2619. There the distinction between furniture and furnishings

was well defined, affording probative information on the issue of the furnishings at bar.

The Customs Court in both cases followed the reasoning in *Morimura Bros.* v. *United States*, 2 Ct. Cust. Appls. 181, T.D. 31941, stating at pages 182–183:

> * * * *House furnishings*, on the other hand, are the subsidiary adjuncts and appendages of the house, designed for its ornamentation or which are of comparatively minor importance so far as personal use, convenience, and comfort are concerned. Chairs, stools, tables, writing desks, wardrobes, bureaus, bedsteads, and chiffoniers are truly house furniture, and *tidies, pillow shams, bed sets, window curtains, and ornamental screens are just as truly house furnishings.* * * * [Emphasis added.]

The provision for "furnishings" was enlarged in TSUS schedule 3, part 5, subpart C, headnote 1, to embrace:

> * * * curtains and drapes, including panels and valances; towels, napkins, tablecloths, mats, scarves, runners, doilies, centerpieces, antimacassars, and furniture slipcovers; and like furnishings; * * *.

Accordingly, the plaintiff's argument in its brief is well taken and the court is satisfied from the record as well as from an examination of exhibit 1, the cotton terry potholder herein, that the imported merchandise constitutes like "furnishings," similar to and *ejusdem generis* with the towels, place mats, napkins, and dish towels enumerated in TSUS schedule 3, part 5, subpart C, *supra*. (Citing *Fujii Junichi Shoten, Ltd., et al.* v. *United States*, 54 Cust. Ct. 277, C.D. 2544; *Plant Products Corporation* v. *United States*, 44 CCPA 183, C.A.D. 658, and other cases.)

The defendant offered no testimony at the trial of the case at bar, and following the filing of its brief by the plaintiff the defendant filed a request to the court asking that it be relieved of filing a brief. Included in the said request is a concession by the defendant agreeing that, in view of the record made, the plaintiff's claim is conceded as correct. A copy of the defendant's aforesaid request is here set forth:

### REQUEST

The United States, defendant, hereby requests that it be relieved from filing a brief herein. This request is being made in view of the record made herein and the plaintiff's claim that the imported merchandise is dutiable under item 366.65 of the Tariff Schedules of the United States, as other furnishings of cotton terry of pile construction, which claim, we agree, is correct.

Jun 17 1968

Respectfully submitted,

EDWIN L. WEISL, JR.
ASSISTANT ATTORNEY GENERAL

(Signed) Andrew P. Vance
ANDREW P. VANCE
Chief, Customs Section

(Signed) Bernard J. Babb
BERNARD J. BABB
Civil Division, Dept. of Justice
Attorneys for Defendant

APPROVED:

(Signed) David J. Wilson
Judge

Based on the foregoing facts of record, this court holds that the presumption of correctness attaching to the collector's classification has been overcome, and the plaintiff's protest claim that the terry cloth potholders at bar are classifiable as "like furnishings" under item 366.65 of TSUS, dutiable at 16 per centum ad valorem, is sustained.

Judgment will be entered accordingly.